I present before you, Sheldon V. DVA, President of the Spaniards. Good morning. My name is Todd Hickenback. I represent the veteran in this case, Frank Sheldon. The Veterans Administration committed a serious error in 1947 when it denied disability benefits to Frank Sheldon, an 84-year-old wartime veteran. Mr. Sheldon has been suffering from a disease called Kleinbach's disease, a painful and degenerative disability that was caused by an injury he suffered while he was in the Army in 1944. There is no question that the Department's denial of benefits was erroneous. Its December 2003 decision granting benefits on a prospective basis demonstrates this. The relevant question in this case is whether Mr. Sheldon will be provided a full and fair opportunity to argue that the denial was a product of clear and unmistakable error. Thus far, he has been denied that opportunity. Most recently, the Court of Appeals for Veterans Claims held that it lacked jurisdiction to consider Mr. Sheldon's main argument in favor of Kew, and it rejected his remaining arguments based upon a misinterpretation of governing law and a mischaracterization of the regional office's decision. These errors should be corrected. I'll begin this morning. Mr. Baum, your argument is that, as I understand, I'm looking at the – I guess it's the JA-60, which is the brief before the CAVC. As I understand it, your argument is that there was Kew here because the regulation speaks to the veteran establishing a concurrence of a disability during service. And it's your view that the VA simply looked to whether there was a, quote, demonstration, close quote, of a disability during the service, right? That's – Is that the gist of what you're arguing? Well, Your Honor, with regard to the jurisdictional argument, there are two separate bases for jurisdiction, and I'll – No, I'm saying – you're saying that that's the argument that you made that the Court of Appeals for Veterans Claims said it did not have jurisdictions, right? That is correct. Okay. The – Mr. Sheldon argued that – attempted to argue before the Veterans Court that the regional office committed error when it disregarded the evidence of concurrence and focused solely on the lack of evidence of demonstration. Now, let me ask you that your contention is – and I'm saying the contention here that was advanced before the Veterans Court but not considered because the court said it did not have jurisdiction – was that the VA, back in 1947, I guess, on those three occasions, didn't have the right focus. But if you look, there is – and I don't know how this cuts, but there is, I think, in the record, one opinion. If you go to J.A., it's the determination of April 14, 1947, J.A. 229. Yeah, 229. It says, it has not shown that you now have a disease or injury incurred in service in line of duty or one that has been aggravated thereby. Doesn't that suggest that there was the correct focus? Again, I don't know how this cuts in terms of whether the court had jurisdiction not to consider your regulatory argument, but it does appear, at least from factual matter, maybe it helps you on the jurisdiction issue, that the Veterans Court did – I'm sorry, the VA in 1947 did look to the question of concurrence. It wasn't just focused on you have to demonstrate during service. Your Honor, if you review the reading sheet, which is a J.A. 221, where the VA actually determined whether or not the disability – whether there was service connection to the disability, the reading sheet says simply, the condition diagnosed as Heimbach's disease was not demonstrated during service. Oh, yeah, no question about it. I'm going to go on through and mark these things where it comes up. I mean, what about, though, the fact that the VA says incurred? I mean, it seems that the ultimate decision here recognized that the question is whether there was incurrence during the service. Your Honor, we would contend that, as you've indicated, whether or not that letter suggests that the VA considered incurrence in 1947 is an issue that the Veterans Court would and should consider, and its failure to consider that argument in the first instance based upon a jurisdictional decision was an error. So that is an open question that the Veterans Court will need to address. We believe that the court, in fact- Is there anything beyond the reading sheet that the letter is based on? Not in April of 1947, Your Honor. I'm just thinking- The words in that letter was a reflection of how they read the reading. That's correct, Your Honor. But that is, you're talking inconsistent? They are inconsistent, Your Honor. The reading sheet solely refers to the lack of demonstration, whereas the regulation and potentially the letter refer to incurrence as well. We feel that there is no question that the Veterans Court had jurisdiction to consider this argument if nothing else than based on the text of the board's decision. The board held in its decision that the 1947 decisions by the regional office properly applied all laws and regulations that were in existence at that time. Therefore, Mr. Sheldon has the right and the Veterans Court certainly has the jurisdiction to consider that portion of the holding. Mr. Huck, if we were to agree with you and send it back to the Veterans Court on this question, the court, in your view, would the court be able to rule on this question? Or would it, in turn, have to send it down again to the BVA? No, Your Honor. We believe that the court could, in fact, rule on this issue. If this court remands to the Veterans Court, we would ask that, given Mr. Sheldon is at downstage, that you instruct the court to so rule with great dispatch. I mean, the question, I guess, the key question presented would be, was there a misapprehension of existing law in terms of the regulatory scheme that existed in 1947? That is correct, except that the key claim that Mr. Sheldon has raised, and which this argument supports, is whether the regional office erred by disregarding the substantial evidence of incurrence and focusing solely on the lack of evidence of demonstration. Did he, in fact, make that claim? Your Honor, there are two parts to that answer. First of all, he did, in fact, make that claim. You referred to the Form 9 that he submitted to the court. He indicated that all the evidence necessary to grant my claim in 1947 was in the VA Claims folder. My doctor offered an opinion that my risk condition was related to the tetanus shot I'd received during active duty. My service medical records were in the VA Claims folder. There was no plausible basis for the finding that the condition was not service-connected. All of the material that was in the service medical records, including the letter from Mr. Sheldon's doctor, indicated that the condition was not demonstrated during service. But it sounds like he's making an argument about evidence, and that there was sufficient evidence to support his claim, as opposed to a claim of an inappropriate application of a standard. The inappropriate application of the standard that he attempted to address before the Veterans Court addressed the same error, which was that the regional office was focused on the lack of demonstration rather than the evidence concerning inference. So the error by the regional office was the same. There's an error in the outcome, obviously. There's a disagreement in the outcome. The question is, what clear and unmistakable error was specifically claimed? And did he, in fact, make that claim, or did he not? Your Honor, his claim was that the regional office disregarded the evidence of certain occurrence, which is the same error that the regulatory argument addressed. And where does this claim say that? This was from the Form 9, Your Honor, the Form 9 submission. Where is that in the attendance? What page are you referring to? Yes, that is JA121. That was the passage that I just read, Your Honor. What you're saying, I guess, Mr. McLaughlin, is given the claim that he himself and his, I guess, veterans organization presented, there was enough there to really say that he was, in effect, contending that they looked at it the wrong way, so that you're not in an Andre situation. Is that your argument? That is correct, Your Honor, that based on his statements and also the statements that his statement incorporated, and certainly the regional office saw it this way when it developed its claim further to address the application of all laws and regulations that weren't existing. Your argument has to be that even though he didn't say they got the case wrong based on the regulations, that's the essence of it. Well, that's certainly the court has jurisdiction. You have to say that, I guess, to get him to conder it. Your Honor, the court has jurisdiction based on the board's holding that all regulations and laws were properly applied. The second basis of jurisdiction is that his argument regarding the regulations was raised in support of his existing claim of error, which was the focus on the lack of evidence of demonstration rather than evidence of occurrence. So there are two separate bases for jurisdiction. I think Judge Charles' point is consistent with my point, that in order for you to make your case with respect to jurisdiction, you have to establish that he made a Q claim, and that the Q claim in question was the appropriate application of the standard. That is correct, Your Honor. In order for the arguments to be considered arguments in support of his Q claim, that must be the way the Q claim is interpreted, and that is the way the Q claim was interpreted by the board. And the only way to read the form, form nine, is to sort of read between the lines. It doesn't say explicitly the wrong standard was applied. It doesn't say anything about it occurred versus demonstrated. It talks about all the evidence necessary to signify. That's correct, Your Honor. If the limit is for you, does that comport with Andre or not? Why does it comport with Andre? Your Honor, it comports with Andre because this form, form nine, and the other submissions Mr. Sheldon provided to the department established a claim of error, and the regulatory argument was an argument that was raised in support of that existing claim of error. Good morning, Your Honors.  The judgment of the Veterans Court should be affirmed. In Andre, this court said that the necessary jurisdictional hook for the Veterans Court to act is a decision of the board on the specific issue of clear and unmistakable error. This court also said that a general claim of Q does not encompass every potential claim of Q in a VA rating decision. So Mr. Sheldon's argument that his general claim of Q encompassed a specific argument that the R.O. in 1947 applied an incorrect standard is simply not supported by the law on this issue. But the board thought so. Well, Your Honor, I would respectfully disagree. The board, and that's what the board said at page 91 of the joint appendix, is that the 1947 rating decisions followed all correct laws and regulations. That's simply not the specific decision on a specific claim of Q that the Veterans Court needs to assert jurisdiction to review that Q claim. It was a wrong statement. It was a wrong statement to review. As a general principle, Your Honor, I would agree, however, with respect to reviewing claims of Q, Andre is very clear that the board has to make a specific conclusion on a specific claim of Q in order for the Veterans Court to act. How would they have, how should they have phrased it? Well, I think that the board, first Mr. Sheldon would have had to rephrase the issue. Well, let's assume he did. Right. I mean, it is cute to talk about how they don't say it in just the right legal jargon when these are veterans who are not represented by anybody when they file their claims. Sure. So let's assume for the purposes of argument that they did. Sure. Okay, now if the board said all Q regulations were filed, how much more specific or how different could they have said it? Could be a legal issue to review. To review the specific legal issue, the board would have had to have said that the 1947 rating decision reviewed the claim as using the current standard and not the demonstration standard. And that simply, there's simply nothing in the board. The board goes on for 12 pages in very great detail regarding the sufficiency of the evidence, which is how the board and the RO in 2003 interpreted Mr. Sheldon's Q claims to be an issue with regard to the sufficiency of the evidence, i.e., everything you had in 1947 in the record was enough to find service connection. That is an entirely separate Q claim from you applied the wrong standard by requiring an additional step or a different step or a higher step than what the law would have told you. One of the things I discussed with Mr. Hickenlooper was the document that is, I guess, the April 14, 47 document that is found at, I'm sorry, bear with me for a second. Yeah, J.A. 229. And it's certainly true, as we've seen, that the various reports use the term the kind of box disease was not demonstrated. This document speaks in terms of incurred. Let me ask you, how do you think this document in any way bears upon the jurisdictional question that we're wrestling with here, namely whether the CAVC erred in not adjudicating this contention? With respect to the jurisdictional issue, I'm not sure that it gets up to here. I'm throwing this around my mind. Maybe you're right. Maybe not. I don't know. On the one hand, one could say, well, it doesn't make any difference. On the other hand, one could say, well, it does because it shows they were talking about incurred. Arguably, there's a recognition of a regulatory standard. The other documents only talk about demonstrated. I just don't know. Your view is, and it's a tough call, your view is that it doesn't bear on the jurisdictional analysis. It may bear on whether they, as a law matter, did consider the regulation. But you're saying it doesn't bear on this jurisdictional issue. As far as I'm considering, Your Honor, I don't see how that would bear on the jurisdictional issue. When Mr. Sheldon brings this claim to the RO for adjudication, I can see that it would certainly bear upon him the merits of this claim. The other thing is this claim will get decided one way or the other. I mean, Mr. Sheldon, as I think we indicated in Andre and the Veterans Court indicated here, Mr. Sheldon can go and present this claim. We'd have to go back to the RO. Yes, sir. And then we'd have to go back up through the BVA and then maybe the Veterans Court again. Or if we were to disagree with what the Veterans Court did, it would go back and the Veterans Court would address it. So it's kind of a question of when it gets addressed, I guess. With the caveat that if this court were to find that the board did, in fact, address Mr. Sheldon's specific claim of a cue, then yes, I think that the Veterans Court could review that decision. But this court simply can't remand it back to the Veterans Court without that finding because the Veterans Court would still lack the jurisdictional hook that this court thought that was necessary in Andre. So, and probably as a practical matter, it would probably be more expedient for Mr. Sheldon to go directly to his RO to start that claim. As we have argued in our brief and as the court made very clear in Andre, he certainly has the right to do so. Well, that's not going to be very expedient for an 84-year-old man if he ever did those things himself. Well, my point is that he has the right to do that now rather than waiting for this court to make a decision. Let me ask you, you may or may not know the answer to this. Strictly speaking, it's outside of it. Do you have any notice as to whether he has pursued that while this case is pending? When I spoke with the VA last week about that issue, they had not received anything like that. A claim for benefits entails a certain set of facts and a certain set of laws and the application of the law to the fact to prove that a benefit is warranted. Doesn't the claim sort of come with those two pieces together? It's the applicable law and the relevant facts to conclude one way or the other whether a benefit is due? And didn't Mr. Sheldon in his claimants, perhaps inarticulate way, say, I'm entitled to a benefit, meaning I'm entitled on these facts, and he argues you have all the evidence, and inferentially on the applicable regulations. He says there's no plausible basis, which is perhaps a layman's way of saying under the applicable law, there's no reason why on these facts I don't get a benefit. Isn't that enough to raise a claim encompassing both the, is the evidence enough, nuance, and was the applicable law a fine nuance to meet the standards of argument? No. Why not? Make that distinction, the distinction between a claim for benefits and a claim for Q. And the claim for Q is a very specific allegation of error. You know, either the allegation that the wrong law at the time was applied or the facts as they were were somehow overlooked, but the veteran has to make a specific allegation. Mr. Sheldon, in page two of his reply brief, expressly disclaims the assertion that the VA did not completely, sympathetically read his Q claim. So there's not even a rubbersome claim to be made. And as we pointed out in our brief, Mr. Sheldon, although he was represented by a non-attorney representative, did have several opportunities to clarify his claim, clarify his Q claim, after the RO issued a statement of the case explaining this is the law that we use, these are the facts that we found, this is how we are interpreting your Q claim. He had opportunities to clarify or to refine that argument, and as you can see from the record, all those arguments that Mr. Sheldon put forth were focused on the sufficiency of the evidence, not any allegation either in legal terms or in layman terms that the wrong standard had applied or that a higher standard had been applied. The claimant said he could now be pursuing this and he hasn't. Is he permitted to pursue the same claim when the claim is pending, is still pending? He is absolutely committed to- Do you have the same claim pending, please? Well, your Honor, we would- The same path? We would certainly, our position certainly is that it's a different Q claim, and this court was clear and honored that that is certainly permissible, and in my conversations with the VA, they have said yes, absolutely, Mr. Sheldon could file a claim for Q based upon this allegation that the VA applied the incorrect standard in 1947, and we would certainly agree to do that without regard to the current proceedings. Given his age and all he's gone through with this claim, in the event if we do occur and he files a separate new claim, would it be reasonable to expect that that claim would be treated on an expedited basis? I certainly think that that would be something- I'm sorry? I mean, what your personal opinion is. Is there a procedure that they could follow? And what assurances might we be able to give him that if that's what happens, that he would be at least given expedited treatment on this claim, given his age and given all that he's gone through here? The VA does have an expedited procedure for various reasons. One would be a veteran of advanced age, and the specifics of that I'm afraid I'm not familiar with. I would be certainly happy to reassure Mr. Sheldon's attorney as to the specifics of that, or to this court, that the court deems that appropriate. I'm not- So you're not prepared to make a promise right now? No, Your Honor. I'd just like to briefly address Mr. Sheldon's second acute claim in the time that I have left, which is that clearly this court left a certification over that acute claim that actually was reviewed and adjudicated by the Veterans Court. The Veterans Court reviewed the board's decision that there were facts on both sides of the coin, and that on that basis there's no cue because it was really an issue of the weighing of the evidence. That decision is final, and this court can't review Mr. Sheldon's allegation that indeed there were no facts on one side, and that all the facts were in favor of the service connection. That is something that this court's precluded from reviewing by statute because it's a purely fact-based argument. If this court has no further questions, I will respect the request of the court firm, the judgment of the Veterans Court. Thank you. Your Honor, first with regard to the question of expediting the review of the acute claim, I'd like to point out that Mr. Sheldon's claim was expedited in this case, and as you recall, initially the original R01 was in April 2003, and we're now here in 2008. So even on an expedited basis, this claim has taken nearly five years to get this far. The second point is that given the pro-veteran approach of the benefits laws, we feel that it would be proper to liberally construe Mr. Sheldon's form nine. He has met the standards for raising an acute claim. His claim was more specific than a general assertion that an error was made. He specifically pointed to evidence, and the interpretation of that evidence demonstrates that he was necessarily arguing that the relevant standard here was the occurrence of his disease, not the lack of demonstration. And finally, he did insert an affidavit saying that he firmly believes the left arm condition was incurred during service shortly after receiving a tetanus inoculation. That's at page 218. He did not point to that in his statement there, but that was part of it.